IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| CHARLES BROWNLEE, | ) | CASE NO. 5:15CV2372 |
| | ) | |
| Petitioner, | ) | JUDGE JAMES S. GWIN |
| | ) | |
| v. | ) | MAGISTRATE JUDGE |
| | ) | KATHLEEN B. BURKE |
| BRIGHAM SLOAN, *Warden*, | ) | |
| | ) | |
| | ) | **REPORT & RECOMMENDATION** |
| Respondent. | ) | |

Petitioner Charles Brownlee, ("Petitioner" or "Brownlee") brings this habeas corpus action pursuant to 28 U.S.C. § 2254.  Doc. 1.  Brownlee is detained at the Lake Erie Correctional Institution, having been found guilty by a Summit County, Ohio, Court of Common Pleas jury of one count of failure to comply with order or signal of a police officer and one count of petty theft.  Doc. 6-2, pp. 16-17.[1]  *State v. Brownlee*, No. CR 2012 11 3084 (Summit Cty. Common Pleas Ct. filed January 10, 2014).  On January 24, 2012, the court sentenced Brownlee to three years on the failure to comply count and six months on the theft count, to be served concurrently, for an aggregate sentence of three years in prison. Doc. 6-1, pp. 20-21.

On November 19, 2015, Brownlee filed his petition for writ of habeas corpus setting forth three grounds for relief.  Doc. 1, pp. 5-8.  This matter has been referred to the undersigned Magistrate Judge for a Report and Recommendation pursuant to Local Rule 72.2.  As set forth more fully below, all Brownlee's grounds are not cognizable and/or fail on the merits.  Thus, the undersigned recommends that Brownlee's petition for writ of habeas corpus (Doc. 1) be **DENIED**.

---

[1]  Doc. page citations are to ECF Doc. page numbers.

# I.  Factual Background

In a habeas corpus proceeding instituted by a person in custody pursuant to the judgment of a state court, the state court's factual findings are presumed correct.  28 U.S.C. § 2254(e)(1). The petitioner has the burden of rebutting that presumption by clear and convincing evidence. 28 U.S.C. § 2254(e)(1); *see also Railey v. Webb*, 540 F. 3d 393, 397 (6th Cir. 2008).  The Summit County Court of Appeals, Ninth Appellate District of Ohio, set forth the facts as follows:[2]

> {¶ 2} At 3:00 a.m. on October 22, 2012, a man walked out of the Walmart in Macedonia with a cart full of merchandise that he had not paid for. The man loaded the items into a car and got into the passenger's seat. When the man did not respond to repeated requests from the manager to provide proof of payment, the manager called the police. The manager provided the police with the make, model, and license plate number of the car. About that same time, a second man exited the store and approached the car. The manager twice asked the second man for a receipt for the items. The man ignored the manager, got into the driver's seat of the car, and sped away.

> {¶ 3} Officer Michael Plesz of the Macedonia Police Department was responding to the theft call when he witnessed a car perform an illegal U-turn. Officer Plesz positioned his cruiser behind the car and activated his lights and sirens to effectuate a traffic stop. The car did not stop, and a high-speed chase ensued. While in pursuit, Officer Plesz was informed that the car he was chasing was the same car involved in the Walmart theft. The car was eventually stopped with the assistance of other officers. Brownlee was identified as the driver.

> {¶ 4} Brownlee was arrested and charged with: (1) failure to comply with order or signal of a police officer, in violation of R.C. 2921.331(B), a felony of the third degree; and (2) petty theft, in violation of R.C. 2913.02(A)(1), a misdemeanor of the first degree. After arraignment, Brownlee was released on bail. When he failed to appear at a January 3, 2013 pretrial hearing, the court revoked his bond and issued a warrant for his arrest. The case was placed on the inactive docket until Brownlee could be located.

*State v. Brownlee*, 2015 WL 4005964, at *1 (Ohio Ct. App. June 30, 2015).

## II. Procedural Background

### A.  State Trial Court

---

[2] The facts are taken from the Ninth District Court of Appeals' decision *State v. Brownlee*, No. 27255 (Ohio Ct. App. June 30, 2015); 2015 WL 4005964 (Ohio Ct. App. June 30, 2015). Brownlee has not demonstrated by clear and convincing evidence that the state court's factual findings were incorrect. Accordingly, the state court's findings are presumed correct. *See* 28 U.S.C. § 2254(e)(1); *see also Railey*, 540 F. 3d at 397.

On December 13, 2012, a Summit County Grand Jury indicted Brownlee on one count of failure to comply with order or signal of police officer, R.C. §2921.331(B), and one count of petty theft, R.C. §2913.02(A)(1).  Doc. 6-1, pp. 4-5.  Brownlee pleaded not guilty. *Id*. p. 7.  On January 10, 2013, Brownlee failed to appear for his first pretrial and the trial court revoked his bond.  *Id*. p. 8.  On July 30, 2013, Brownlee filed a "Notice of Availability," in which he notified the court   that he was being held in the Cuyahoga County Jail.  *Id*. p. 9.  The court issued a warrant on August 22, 2013, to remove Brownlee from the Cuyahoga County Jail and return him to Summit County by September 4, 2013, for a status conference.  *Id*. p. 10.  Brownlee was not returned from Cuyahoga County and the status conference was continued.  *Id*. at 11.  On September 20, 2013, the pretrial was continued until November 7, 2013, and time was charged to Brownlee.  *Id*. at 12.  A trial date was set for February 2014; on December 2, 2013, at Brownlee's request, the court reset trial for January 6, 2014, due to speedy trial considerations.  *Id*. p. 13; *Brownlee*, 2015 WL 4005964, at *3.  On January 3, 2014, Brownlee, through counsel, filed a motion to dismiss for failure to timely prosecute, asserting that he was arrested on October 22, 2012, and had, by the time of his motion, been held in the Summit County Jail in excess of 125 days.  Doc. 6-1, p. 15.[3]

The case proceeded to trial.  On January 8, 2014, the jury found Brownlee guilty on both counts.  *Id*. pp. 16-17.  Brownlee, *pro se*, filed a second motion to dismiss, arguing that his speedy trial rights were violated.  *Id*. p. 19.  On January 24, 2014, the court sentenced Brownlee to three years on the failure to comply count and six months on the theft count, to be served concurrently, for an aggregate sentence of three years in prison.  *Id*. pp. 20-21.  The trial court also struck Brownlee's motion to dismiss as improperly filed.  *Id*. p. 22.

**B.  Direct Appeal**

---

[3]  The state trial court docket does not contain an entry ruling on this motion.  *See* Doc. 6-1, pp. 164-165.

On February 19, 2014, Brownlee, through counsel, filed a notice of appeal to the Ohio

Court of Appeals.  *Id*. p. 23.   In his brief, he raised the following assignments of error:

> 1. Appellant's convictions were against the sufficiency and manifest weight of the evidence.
>
> 2. The trial court committed reversible error when it denied Defendant-Appellant Brownlee's motion to dismiss for violation of his speedy trial rights.
>
> 3. The trial court committed reversible error when it sentenced Defendant-Appellant Brownlee to a maximum sentence.

*Id*. pp. 25, 35.[4]  On June 30, 2015, the Ohio Court of Appeals overruled Brownlee's assignments

of error and affirmed the trial court's judgment.  *Id*. pp. 79-94.

### C.  Ohio Supreme Court

On August 6, 2015, Brownlee, *pro se*, filed a notice of appeal to the Ohio Supreme Court.

*Id*. p. 95.  He presented three propositions of law:

> 1. Appellant's convictions were against the sufficiency and manifest weight of the evidence.
>
> 2. The trial court committed reversible error when it denied Appellant's motion to dismiss for violation of his speedy trial rights pursuant to R.C. §§2945.71, 2945.73 and the Sixth and Fourteenth Amendments to the United States Constitution and Article I Section 10 of the Ohio Constitution.
>
> 3. The trial court committed reversible error when it sentenced Appellant to a maximum sentence.

*Id*. pp. 113, 118.  On September 8, 2015, Brownlee filed a request asking the Ohio Supreme

Court to place a June 30, 2015, trial court entry awarding Brownlee an additional jail time credit

of 61 days into his Supreme Court appeal record.  *Id*. p. 142.   On October 28, 2015, the Ohio

---

[4]  The assignments of error listed in the table of contents in Brownlee's appellate brief to the Ohio Court of Appeals erroneously sets forth the first assignment of error as, "the trial court [ ] denied [ ] Brownlee's motion for acquittal pursuant to Criminal Rule 29."  Doc. 6-1, p. 25.  Brownlee's actual first assignment of error was that his convictions were against the sufficiency and the manifest weight of the evidence.  *See* Doc. 6-1, p. 35 (Brownlee's appellate brief argument section asserting the first assignment of error, a sufficiency and manifest weight claim); *Brownlee, 2015 WL 4005964, at \*4* (describing Brownlee's first assignment of error as a sufficiency and manifest weight of the evidence claim).  For clarity, the undersigned sets forth the actual assignments of error argued by Brownlee in his appeal to the Ohio Court of Appeals and the Ohio Supreme Court rather than the erroneous assignments of error listed in his state court briefs.

Supreme Court declined jurisdiction of Brownlee's appeal pursuant to S.Ct.Prac.R. 7.08(B)(4) and denied his request to supplement the record as moot.  *Id*. p. 146.

### D. Motion for Reconsideration

Meanwhile, on July 15, 2015, Brownlee, *pro se*, filed a motion for reconsideration in the Ohio Court of Appeals alleging the following sole assignment of error:

1. "Error in the Court's counting of days chargeable against the State."

*Id*. p. 148.  Brownlee then filed a motion to supplement the record to include the trial court's entry granting him 61 days of jail time credit.  *Id*. p. 157.  On August 24, 2015, the Ohio Court of Appeals denied both motions, finding that Brownlee's motion to supplement improperly referred to matters outside the record and that his motion for reconsideration did not identify an obvious error or raise an issue that the appellate court did not properly consider.  *Id*. pp. 160-163.

### E. Federal Habeas Petition

On November 19, 2015, Brownlee, *pro se*, filed a petition for a writ of habeas corpus.

Doc. 1.   He listed the following grounds for relief:

> **Ground One:** Appellant's convictions were against the sufficiency and manifest weight of the evidence.

> **Ground Two**: The trial court committed reversible error when it denied Appellant's motion to dismiss for violation [of] his right to speedy trial.

> **Ground Three**: The trial court committed reversible error when it sentenced Appellant to a maximum sentence.

Doc. 1, pp. 5-8.  On February 10, 2015, Respondent filed a Return of Writ.  Doc. 6.  Respondent argues that all Brownlee's grounds fail on the merits and/or are not cognizable.  Doc. 6, pp. 8-25.

Brownlee filed a Traverse (Doc. 7) and "Motion for Order for Immediate Release" (Doc. 8).

### III. Law

#### A.  Standard of Review under AEDPA

The provisions of the Antiterrorism and Effective Death Penalty Act of 1996, Pub.L. No. 104-132, 110 Stat. 1214 ("AEDPA"), apply to Brownlee's habeas petition. 28 U.S.C. § 2254; *Stewart v. Erwin*, 503 F.3d 488, 493 (6th Cir. 20_07). Under AEDPA, a petitioner must meet certain procedural requirements in order to have his claims reviewed in federal court. *Smith v. Ohio Dep't of Rehab. & Corr.,* 463 F.3d 426, 430 (6th Cir. 20_06). "Procedural barriers, such as statutes of limitations and rules concerning procedural default and exhaustion of remedies, operate to limit access to review on the merits of a constitutional claim." *Daniels v. United States*, 532 U.S. 374, 381 (20_01). Although procedural default is sometimes confused with exhaustion, exhaustion and procedural default are distinct concepts. *Williams v. Anderson*, 460 F.3d 789, 806 (6th Cir. 20_06). Failure to exhaust applies when state remedies are "still available at the time of the federal petition." *Id.* at 806 (quoting *Engle v. Isaac*, 456 U.S. 107, 125 n.28 (1982)). In contrast, when state court remedies are no longer available, procedural default rather than exhaustion applies. *Williams*, 460 F.3d at 806.

In order to obtain habeas relief under 28 U.S.C. § 2254(d), a petitioner must show either that the state court decision (1) resulted in a decision contrary to, or involving an unreasonable application of, clearly established federal law as determined by the United States Supreme Court ("contrary to" clause); or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings ("unreasonable application" clause). *Id*.

"Under the 'contrary to' clause, a federal habeas court may grant a writ if the state court arrives at a conclusion opposite to that reached by the [United States Supreme] Court on a question of law or [based on] a set of materially indistinguishable facts." *Williams v. Taylor*, 529 U.S. 362, 412-413 (2000). Under the "unreasonable application" clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from th[e]

6

Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Id.* at 413.  "Clearly established federal law" refers to the holdings, not dicta, of the Supreme Court's decisions as of the time of the relevant state-court decision, as well as legal principals and standards flowing from Supreme Court precedent.  *Id.* at 412; *Ruimveld v. Birkett*, 404 F.3d 1006, 1010 (6th Cir. 2005).  A state court is not required to cite Supreme Court precedent or reflect an awareness of Supreme Court cases, "so long as neither the reasoning nor the result of the state-court decision contradicts" such precedent.  *Early v. Packer*, 537 U.S. 3, 8 (2002); *Lopez v. Wilson*, 426 F.3d 339, 358 (6th Cir. 2005).  If the Supreme Court has not addressed the petitioner's specific claims, a reviewing district court cannot find that a state court acted contrary to, or unreasonably applied Supreme Court precedent or clearly established federal law.  *Carey v. Musladin*, 549 U.S. 70, 77 (2006).

In determining whether the state court's decision involved an unreasonable application of law, the court employs an objective standard.  *Williams*, 529 U.S. at 409.  "A state court's determination that a claim lacks merit precludes federal habeas review so long as 'fair-minded jurists could disagree' on the correctness of the state court's decision."  *Harrington v. Richter*, 562 U.S. 86, 101 (2011) (citing *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)); *see also Bray v. Andrews*, 640 F.3d 731, 738 (6th Cir. 2011).  "A state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fair-minded disagreement."  *Harrington*, 562 U.S. at 103.

### IV. Claim Analysis

#### A.  Claims Overview

Brownlee sets forth three grounds for relief in his petition. Doc. 1, pp. 5-8.  Respondent argues that all Brownlee's grounds fail on the merits and/or are not cognizable.  Doc. 6, pp. 8-25.

For the reasons that follow, the undersigned agrees that Brownlee's grounds fail on the merits and/or are not cognizable.

### 1. A portion of Ground One fails on the merits and a portion of Ground One is not cognizable

In Ground One, Brownlee argues that his convictions were against the sufficiency and the manifest weight of the evidence.  Doc. 1, p. 5.  He provides no reasons in support of his assertion either in his Petition or his Traverse.

In reviewing a claim that a petitioner's conviction was not supported by sufficient evidence, the relevant inquiry is "whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979) (emphasis in original).  Under this standard, deference is due the jury's determination.  *Brown v. Konteh*, 567 F.3d 191, 205 (6th Cir. 2009).  The standard is not whether the trier of fact made the correct guilt or innocence determination but, rather, whether it made a rational decision to convict or acquit. *Herrera v. Collins*, 506 U.S. 390, 402 (1993).  Thus, in making a determination as to sufficiency of evidence, a court does "not reweigh the evidence, re-evaluate the credibility of witnesses, or substitute [its] judgment for that of the jury." *Brown*, 567 F.3d at 205; *see also Matthews v. Abramajtys*, 319 F.3d 780, 788 (6th Cir. 2003).  "Circumstantial evidence alone is sufficient to support a conviction, and it is not necessary for the evidence to exclude every reasonable hypothesis except that of guilt." *Johnson v. Coyle*, 200 F.3d 987, 992 (6th Cir. 2000) (internal quotations and citations omitted); *see also Durr v. Mitchell*, 487 F.3d 423, 449 (6th Cir. 2007) ("circumstantial evidence is entitled to equal weight as direct evidence").

On federal habeas review, an additional layer of deference applies.  *Brown*, 567 F.3d at 205; *Snyder v. Marion Corr. Inst., Warden*, 608 Fed. App'x 325, 327 (6th Cir. 2015) (indicating

that, where a petitioner's "claims arise in the context of a § 2254 petition, [the court's analysis] must be refracted through yet another filter of deference") (citing *Coleman v. Johnson*, — U.S. —, 132 S.Ct. 2060, 2062, 182 L.Ed.2d 978 (2012) (per curiam) which reaffirmed that sufficiency of the evidence claims under *Jackson* "face a high bar in federal habeas proceedings because they are subject to two layers of judicial deference").  Accordingly, even if this Court were to conclude that a rational trier of fact could not have found petitioner guilty beyond a reasonable doubt, the Court "must still defer to the *state appellate court's* sufficiency determination as long as it is not unreasonable." *Brown*, 567 F.3d at 205 (emphasis in original); *see also White v. Steele*, 602 F.3d 707, 710 (6th Cir. 2009).

The Ohio Court of Appeals considered Brownlee's sufficiency claim and explained,

{¶ 21} "'[S]ufficiency' is a term of art meaning that legal standard which is applied to determine whether the case may go to the jury or whether the evidence is legally sufficient to support the jury verdict as a matter of law." *State v. Thompkins*, 78 Ohio St.3d 380, 386 (1997), quoting *Black's Law Dictionary* 1433 (6th Ed.1990). "In essence, sufficiency is a test of adequacy." *Thompkins* at 386. When reviewing a conviction for sufficiency, evidence must be viewed in a light most favorable to the prosecution. *State v. Jenks*, 61 Ohio St.3d 259 (1991), paragraph two of the syllabus. The pertinent question is whether "any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." *Id.*

{¶ 22} "Whether the evidence is legally sufficient to sustain a verdict is a question of law." *Thompkins* at 386, citing *State v. Robinson*, 162 Ohio St. 486 (1955). This Court, therefore, reviews questions of sufficiency de novo. *State v. Salupo*, 177 Ohio App.3d 354, 2008–Ohio–3721, ¶ 4 (9th Dist.).

*a. Theft*

{¶ 23} R.C. 2913.02(A)(1), in relevant part, provides that "[n]o person, with the purpose to deprive the owner of property * * *, shall knowingly obtain or exert control over [ ] the property * * * [w]ithout the consent of the owner or person authorized to give consent[.]" "A person acts knowingly, regardless of his purpose, when he is aware that his conduct will probably cause a certain result or will probably be of a certain nature. A person has knowledge of circumstances when he is aware that such circumstances probably exist." R.C. 2901.22(B).

{¶ 24} Brownlee argues that there is insufficient evidence to support his theft conviction because the State presented no evidence that he "had [any] knowledge of any merchandise being stolen from Walmart." We disagree.

{¶ 25} Mark Hall was working as the Assistant Manager at Walmart in Macedonia at the time of the incident. Hall testified that because the store was very slow at that hour he only had one checkout line open. Hall said the cashier on duty notified him that she saw a man exit the store with a cart full of store merchandise. The man had not come through the cashier's checkout line. Hall ran out into the parking lot to confront the man. Hall testified that he only saw one person in the parking lot. That man matched the description provided by the cashier and he was pushing a cart full of merchandise toward a gray car. As Hall approached the car, the man was loading the merchandise into the car's trunk and backseat. According to Hall, he twice called out to the man and requested proof of payment. When the man ignored him and got into the car's passenger seat, Hall called the police. Hall provided the police with the car's make, model, and license plate number.

{¶ 26} About that time, a second man exited the store and approached the car. Hall said he was standing about 15 to 20 feet from the second man when he called out and requested to see a receipt for the merchandise. Hall called out twice before the second man got into the driver's seat and the car sped off "at a high rate of speed." Officer Plesz, after a high-speed chase, was able to pull the vehicle over and identify Brownlee as the driver. Officer Plesz testified that he had been provided a description of the merchandise stolen from Walmart, and he located the described items in the trunk and backseat of the car.

{¶ 27} Viewing the evidence in a light most favorable to the State, there is sufficient evidence to support a finding that Brownlee knew the items in the car had not been paid for. Hall testified that he was standing 15 to 20 feet from Brownlee when he twice requested proof of payment for the merchandise in the car. Brownlee ignored Hall, climbed into the driver's seat, and sped away. A rational juror could have found the essential elements of theft proven beyond a reasonable doubt. *See Jenks*, 61 Ohio St.3d at paragraph two of the syllabus.

*b. Failure to Comply*

{¶ 28} R.C. 2921.331(B) provides that "[n]o person shall operate a motor vehicle so as willfully to elude or flee a police officer after receiving a visible or audible signal from a police officer to bring the person's motor vehicle to a stop." The offense is elevated to a felony of the third degree if the State proves beyond a reasonable doubt that "[t]he operation of the motor vehicle by the offender caused a substantial risk of serious physical harm to persons or property." R.C. 2921.331(C)(5)(ii).

{¶ 29} Brownlee argues that his conviction for failure to comply is not supported by sufficient evidence because the State failed to prove that "[his] driving posed a substantial risk of serious physical harm to persons or property."

10

{¶ 30} Officer Plesz testified that he was responding to a theft call from Walmart when he witnessed a car execute an illegal U-turn. Officer Plesz positioned his cruiser behind the car and activated his lights and sirens to conduct a traffic stop. The car did not stop. Instead, the car led Officer Plesz on a high-speed chase north on I–271, then west on I–480. The chase was recorded on Officer Plesz's dashcam and admitted into evidence. The chase lasted approximately seven minutes and covered 10.4 miles. During a majority of the chase the cars were traveling over 100 m.p.h.

{¶ 31} Officer Plesz testified that he was concerned because Brownlee was unable to maintain a specific lane and was passing cars [at] a high rate of speed. Officer Plesz explained that he was particularly concerned because Brownlee was passing cars on the right side and when motorists see emergency lights "they tend to pull to the right." He was worried that motorists would not see Brownlee's speeding car and might pull in front of him. Officer Plesz described "one incident where a car moved from the left lane to the right lane in front of Mr. Brownlee and [Brownlee] came very close to the rear end of that vehicle. [Officer Plesz] wasn't sure if [Brownlee would] be able to correct and get to the left lane."

{¶ 32} While Officer Plesz testified that it was not unusual for drivers to change lanes without signaling or to pass other drivers on the right, it is very unusual for a driver to do those things while traveling at 110 m.p.h. The uncertainty of how the other motorists on the roadway would react and the very high rate of speed that they were traveling caused Officer Plesz to feel that his safety was in danger. Additionally, Officer Plesz testified that other vehicles had to maneuver out of Brownlee's way and that those maneuvers placed those drivers in harm's way. Viewing the evidence in a light most favorable to the State, there is sufficient evidence to support a finding that Brownlee's driving caused a substantial risk of serious physical harm to persons or property.

{¶ 33} Brownlee's second assignment of error, as it relates to the sufficiency of the evidence, is overruled.

*Brownlee*, 2015 WL 4005964, at * 4-6.

The Ohio Court of Appeals applied the correct standard to Brownlee's sufficiency claim and its determination was not unreasonable. Brownlee does not claim otherwise. Accordingly, his sufficiency claim fails on the merits.

Brownlee also asserts that his convictions were against the manifest weight of the evidence. However, federal habeas corpus relief is available only to correct federal constitutional violations. 28 U.S.C. § 2254(a); *Wilson v. Corcoran*, 562 US 1, 5 (2010). A claim that a conviction is against the manifest weight of the evidence rests solely on state law and is

not a cognizable claim in a federal habeas petition.  *See Ross v. Pineda*, 2011 WL 1337102, at *3 (S.D.Ohio April 11, 2011) ("Whether a conviction is against the manifest weight of the evidence is purely a question of Ohio law," citing *State v. Thompkins*, 678 N.E.2d 541 (Ohio 1997)).

In sum, Brownlee's sufficiency of the evidence claim in Ground One fails on the merits and his manifest weight of the evidence claim in Ground One is not cognizable.

### 2. Ground Two is not cognizable and fails on the merits

In Ground Two, Brownlee argues that his right to a speedy trial was violated.  Doc. 1, p. 6.  To the extent that Ground Two is premised on an alleged violation of Ohio's speedy trial statute, Brownlee fails to raise a cognizable claim for federal habeas relief.  *See Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991) ("a federal court is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States").

To the extent that Ground Two is premised on an alleged violation of the Sixth Amendment right to a speedy trial, it fails on the merits.  The Sixth Amendment to the United States Constitution guarantees a defendant a "speedy and public trial."  U.S. Const. Amend. VI; *Barker v. Wingo*, 407 U.S. 514, 515-516 (1972).  In *Barker*, the Supreme Court refused to establish a set number of days constituting a violation of the speedy trial right.  *Id.* at 523.  Instead, the Court established a balancing test in which the conduct of both the prosecution and the defendant are weighed to assess whether a speedy trial violation has occurred based on the length of the delay between the date of indictment or arrest (whichever is earlier) and the date of trial.  *Id.* at 530; *see also United States v. Marion*, 404 U.S. 307, 320-21 (1971).  The following four factors are to be considered under this balancing test: (1) the length of the delay; (2) the reason for the delay; (3) the defendant's assertion of his right to a speedy trial; and (4) prejudice to the defendant. *Barker*, 407 U.S. at 530; *see also Doggett v. United States*, 505 U.S. 647, 651 (1992).

In Ohio, courts consider the state speedy trial provisions found in R.C. § 2945.71 *et seq.*, which Ohio courts consider coextensive with the Sixth Amendment speedy trial requirement. *Brown v. Bobby*, 656 F.3d 325, 330 (6th Cir. 2011) (citing *State v. O'Brien*, 516 N.E.2d 218, 220 (Ohio 1987) and *State v. Pachay*, 416 N.E.2d 589, 591 (Ohio 1980)).  Rev. Code. § 2945.71(C)(2) provides,  "[a] person against whom a charge of felony is pending . . . shall be brought to trial within two hundred seventy days after the person's arrest."  "For purposes of computing time . . . each day during which the accused is held in jail in lieu of bail on the pending charge shall be counted as three days."  § 2945.71(E).  R.C. § 2945.72 lists instances in which the time limit for bringing an accused to trial may be tolled, including: "Any period during which the accused is unavailable for hearing or trial ..."; "Any period of delay occasioned by the neglect or improper act of the accused"; and "The period of any continuance granted on the accused's own motion, and the period of any reasonable continuance granted other than upon the accused's own motion."  § 2945.72(A),(D),(H).  "[A]ny time an Ohio court reviews the implementation of a speedy trial statute, it is guided not just by those provisions, but also by the dictates of the Sixth Amendment whether or not it expressly applies the factors laid out in *Barker*."  *Brown*, 656 F.3d at 331.

Because AEDPA deference applies to a state appellate court's speedy trial analysis on federal habeas review, a court:

> need not go into too great of depth in considering these two factors, but instead should simply ascertain whether the state court's decision constituted an unreasonable application of clearly established federal law. *See* 28 U.S.C. § 2254(d)(1). A decision can "unreasonably apply" federal law if "the state court identifies the correct governing legal rule from [Supreme Court] cases but unreasonably applies it to the facts of the particular state prisoner's case," or if "the state court either unreasonably extends a legal principle from [Supreme Court] precedent to a new context where it should not apply or unreasonably refuses to extend that principle to a new context where it should apply." *Williams*, 529 U.S. at 407, 120 S.Ct. 1495. This court is not concerned with whether the state court ruled erroneously or incorrectly, but rather with whether the state court decision was "objectively unreasonable." *See Lordi v. Ishee*, 384 F.3d 189, 195 (6th

Cir.2004); *Cyars v. Hofbauer*, 383 F.3d 485, 493 (6th Cir.2004); *McAdoo v. Elo*, 365 F.3d 487, 493 (6th Cir.2004).

*Id.* at 332-333.

The Ohio Court of Appeals considered Brownlee's speedy trial claim as follows:

{¶ 6} In his second assignment of error, Brownlee argues that the court erred in denying his motion to dismiss based on a violation of his right to a speedy trial.

{¶ 7} The Sixth Amendment to the United States Constitution guarantees that "[i]n all criminal prosecutions, the accused shall enjoy the right to a speedy * * * trial * * *." Accord Article 1, Section 10 of the Ohio Constitution. An individual's fundamental right to a speedy trial is applicable to the states through the Fourteenth Amendment. *Klopfer v. North Carolina*, 386 U.S. 213, 223 (1967). The issue of whether an accused's constitutional right to a speedy trial has been violated is analyzed under a reasonableness standard. *See State v. Hull*, 110 Ohio St.3d 183, 2006–Ohio–4252, ¶ 14, citing *State v. Fanning*, 1 Ohio St.3d 19, 21 (1982). "In *Barker v. Wingo*, 407 U.S. 514 (1972), the [C]ourt identified four factors to be assessed in determining whether an accused had been constitutionally denied a speedy trial: (1) the length of the delay, (2) the reason for the delay, (3) the defendant's assertion of his right to a speedy trial, and (4) the prejudice to the defendant." *Hull* at ¶ 22, citing *Wingo* at 530.

{¶ 8} In Ohio, an accused's right to a speedy trial is also protected by statute. *See* R.C. 2945.71 *et seq*. A person accused of a felony "[s]hall be brought to trial within two hundred seventy days after the person's arrest." R.C. 2945.71(C)(2). If the accused is held in jail solely on the pending charge, each day in jail shall count as three days for speedy trial purposes. R.C. 2945.71(E); *State v. Sanchez*, 110 Ohio St.3d 274, 2006–Ohio–4478, ¶ 7. The speedy trial statute "must be strictly adhered to by the state." *State v. Butcher*, 27 Ohio St.3d 28, 31 (1986). "An accused presents a prima facie case for discharge due to a speedy trial violation by demonstrating that his case was pending for a time exceeding the statutory limits in R.C. 2945.71." *State v. Mitchell*, 2d Dist. Montgomery No. 24743, 2012–Ohio–2107, ¶ 17, citing *Butcher* at 31. If the accused makes a prima facie showing, the burden then shifts to the State to show that a tolling event has extended the time for trial. *State v. Gaines*, 9th Dist. Lorain No. 00CA008298, 2004–Ohio–3407, ¶ 12.

{¶ 9} A trial court's determination of speedy trial issues presents a mixed question of law and fact. *State v. Fields*, 9th Dist. Wayne No. 12CA0045, 2013–Ohio–4970, ¶ 8. "When reviewing an appellant's claim that he was denied his right to a speedy trial, this Court applies the de novo standard of review to questions of law and the clearly erroneous standard of review to questions of fact." *Id.*, quoting *State v. Downing*, 9th Dist. Summit No. 22012, 2004–Ohio–5952, ¶ 36.

{¶ 10} Brownlee's argument rests solely on his statutory right to a speedy trial. He makes no argument that his constitutional speedy trial right has been violated under the factors articulated in *Wingo*. Therefore, we limit our analysis accordingly. *See State v. Stokes*, 193 Ohio App.3d 549, 2011–Ohio–2104, ¶ 9 (12th Dist.).

{¶ 11} Brownlee argues that the court erred in resetting his speedy trial clock when he failed to show for a pretrial conference. However, even if we were to accept Brownlee's argument that his speedy trial time does not reset after his failure to appear at a pretrial, the record does not support his assertion that his speedy trial right was violated.

{¶ 12} Brownlee was arrested on October 23, 2012, and released on bond on December 21, 2012. This period of 59 days totals 177 days for speedy trial purposes. *See* R.C. 2945.71(E). The court scheduled a pretrial hearing for January 3, 2013. December 21, 2012 to January 3, 2013 is 13 days. This brought Brownlee's speedy trial time to 190 days. Brownlee failed to appear for the pretrial hearing. The court issued a warrant for his arrest and revoked his bond.

{¶ 13} Brownlee did not reappear in the Summit County Court of Common Pleas until November 7, 2013. No time between January 3, 2013 and November 7, 2013 counts toward his speedy trial time.[1] At the November 7, 2013 hearing, Brownlee's attorney requested a continuance until November 21, 2013. Therefore, no time between November 7, 2013 and November 21, 2013 counts toward his speedy trial time. Brownlee's speedy trial clock remained at 190 days.

> [FN1] At some point between January 3rd and November 7th, Brownlee was being held in the Cuyahoga County Jail for a case pending in that jurisdiction. It is unclear from the record when Brownlee's case in Cuyahoga County was resolved and when he was first available to appear in the Summit County Court of Common Pleas. At the November 7, 2013 hearing, the State informed the court that Brownlee had been returned to Summit County on August 22, 2013, but that he failed to appear at the September 5, 2013 hearing because he was back in Cuyahoga County. Defense counsel noted that there was a final pretrial in Cuyahoga County on August 28, 2013, but that he did not know what happened after that. Brownlee bears the burden on appeal and has failed to show that he was available to the court prior to November 7th. Thus, we use that date in our calculation.

{¶ 14} At the November 21, 2013 hearing, the court set a February 5, 2014 trial date. The court went on to say that its "schedule is such that [it is] jam packed full in December and January." Another pretrial hearing was held on December 2, 2013, to discuss concerns about Brownlee's speedy trial. The court noted that it was not possible to schedule a trial in December; "We're not going to be able to get the trial in before Christmas. We have too many other trials set between now and then." The court further explained that it had a capital case set for a jury trial on January 13th, "[s]o really, the only available trial date in the month of January is the first full week of January starting the 6th." Brownlee's attorney agreed to the January 6th trial date.

> [Prosectuor]: And it's very clear, I think, on the record at this point that the defense is okay with that January 6th trial date?
>
> [Defense Counsel]: Yes, I am. The defense indicates that we are, correct.

{¶ 15} Brownlee agreed to the January 6th trial date prior to the expiration of his speedy trial time.[2] Further, January 6th, approximately one month from the pre-trial hearing, was the earliest available date on the court's docket, making the extension of time for trial reasonable. Therefore, even assuming Brownlee's speedy trial clock did not reset, there was no violation of Brownlee's statutory right to a speedy trial. *See State v. Ramey*, 132 Ohio St.3d 309, 2012–Ohio–2904, ¶ 31 (when defense counsel acquiesces to a trial date beyond the statutory speedy trial time, "the court has discretion to extend the trial date beyond the statutory time limit" provided the continuance is reasonable.). *Accord State v. Davis*, 46 Ohio St.2d 444, 448–449 (1976).

> [FN2] On December 2, 2013, Brownlee's speedy trial clock was at 223 days. November 21, 2013 to December 2, 2013 is 11 days or 33 days for speedy trial purposes. 190 days (October 23, 2012 to January 3, 2013) plus 33 days totals 223 days.

{¶ 16} Brownlee argues, in the alternative, that he was not brought to trial within 180 days of his Notice of Availability as required by R.C. 2941.401. However, Brownlee did not properly file his request for a final disposition nor is there any evidence in the record that R.C. 2941.401 was applicable to him.

{¶ 17} A person who has "entered upon a term of imprisonment in a correctional institution" may file a request for the State to proceed with any pending indictments against him. R.C. 2941.401. There is no evidence in the record that Brownlee was ordered to serve a term of imprisonment in Cuyahoga County. Instead, at the November 7, 2013 hearing Brownlee informed the court that the Cuyahoga County case had been dismissed. Therefore, it is unclear if R.C. 2941.401 would even be available to Brownlee. *See State v. Boone*, 9th Dist. Summit No. 26104, 2012–Ohio–3142, ¶ 17, *vacated on other grounds*, *State v. Boone*, 2013–Ohio–2664.

{¶ 18} However, even assuming R.C. 2941.401 was applicable, there is no evidence in the record that the statute was properly invoked. R.C. 2941.401 requires the request for final disposition be "delivered to the prosecuting attorney and the appropriate court." Additionally, the request "shall be accompanied by a certificate of the warden or superintendent having custody of the prisoner, stating the term of commitment under which the prisoner is being held, the time served and remaining to be served on the sentence * * *." There is no evidence in the record that Brownlee served the prosecution and there is no certificate of the warden attached. Because Brownlee did not properly invoke the request for final disposition, the 180 day speedy trial clock under R.C. 2941.401 never began to run.

{¶ 19} Brownlee's second assignment of error is overruled.

*Brownlee*, 2015 WL 4005964, at *1-4.

Although Brownlee repeatedly asserts that "the state court miscalculated the days chargeable against the state" (Doc. 7, pp. 4-6), he does not explain how the state court miscalculated the days or offer his purportedly correct calculation.  Although he asserts that the trial court miscalculated the days chargeable against him and that "the court of appeals went along in their review and affirmed [his] convictions]," he does not describe how the Ohio Court of Appeals' decision was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings.  *See* 28 U.S.C. § 2254(d)(2).  Instead, he simply asserts that the state courts' calculation was erroneous.  He also fails to show that the Ohio Court of Appeals' decision unreasonably applied clearly established federal law, as he is required to do.  *See* § 2254(d)(1); *Brown*, 656 F.3d at 332.  And "this court is not concerned with whether the state court ruled erroneously or incorrectly, but rather with whether the state court decision was 'objectively unreasonable.'"  *Id.* at 333.

The Ohio Court of Appeals' decision was not objectively unreasonable; it applied the correct Ohio statutory provisions and found that the 270 days had not run based on applicable triggering events tolling that 270-day period, including Brownlee's failure to appear for his pretrial hearing, his motion to continue, and a short, reasonable continuance due to the availability of the court that was agreed to by Brownlee's attorney.  *See Id.* at 332 (finding that Ohio's statutory factors regarding speedy trial are similar to the factors in *Barker*; "Ohio's manner of looking at the reason for the delay is thus not contrary, or diametrically opposed, to federal precedent.").  It cannot be said, therefore, that the Ohio Court of Appeals' decision was contrary to or an unreasonable application of clearly established federal law.  Brownlee's claim that his federal speedy trial rights were violated fails on the merits.

### 3. Ground Three is not cognizable and fails on the merits

In Ground Three, Brownlee argues that the trial court erred when it sentenced him to a maximum sentence.  Doc. 1, p. 8.  This claim is not cognizable in a federal habeas petition because it is based on a state sentencing error.  *Howard v. White*, 76 Fed. App'x 52, 53 (6th Cir. Sept. 16, 2003) (claim challenging the state court's interpretation and application of its sentencing laws and guidelines not cognizable in federal habeas review, citing *Estelle*, 502 U.S. at 67); *Pulley v. Harris*, 465 U.S. 37, 41 (1984) (perceived state law sentencing error not cognizable on federal habeas review).

Moreover, Brownlee's claim fails on the merits.  His apparent assertion that he was sentenced to the maximum jail time in retaliation for not pleading guilty (Doc. 7, pp. 7-8) is belied by the record.  The Ohio Court of Appeals explained,

> {¶ 37} In his third assignment of error, Brownlee argues that the court erred when it imposed a maximum prison sentence on his failure to comply conviction. Specifically, Brownlee argues that the court imposed the maximum sentence to punish him for asserting his right to a jury trial. Brownlee further argues that the court abused its discretion and failed to consider the purposes and principles of sentencing.

> {¶ 38} "[A] defendant is guaranteed the right to a trial and should never be punished for exercising that right or for refusing to enter a plea agreement." *State v. O'Dell*, 45 Ohio St.3d. 140 (1989), paragraph two of the syllabus. Brownlee directs our attention to the following statement made by the trial judge prior to opening statements: "You're being offered the two years, but I don't think the prosecutor's going to keep the offer open forever because we're already here." According to Brownlee, the trial court's reference to the plea offer "implie[d] that the court was willing to adopt the offer and that it may disappear after trial."

> {¶ 39} Standing alone, "the fact that the sentence imposed after trial is greater than the sentence the State offered to recommend in exchange for a guilty plea does not demonstrate that the trial court acted improperly." *State v. Mayle*, 7th Dist. Carroll No. 04 CA 808, 2005–Ohio–1346, ¶ 46. During a trial the court learns more details about the facts of the case, which it may properly consider when imposing sentence. *See id.*

> {¶ 40} At Brownlee's sentencing, the trial judge remarked on what she "observed and heard" during his trial. She noted that, following the theft, Brownlee fled first from the store's loss prevention officer and then from police. After the police officer activated his lights and sirens, Brownlee refused to stop and led the officer on a high speed chase. The judge observed that Brownlee's high rate of speed endangered the lives of many people, including himself, his passenger, the officer, and everyone on the roadway. She further

noted that his "highly reckless and dangerous" flight continued for seven minutes. For his part, Brownlee apologized stating that he "panicked," "made a mistake," and "didn't think it was a[s] serious as it was." The judge expressed concern that Brownlee "just do[es]n't think it's that big of a deal." Brownlee responded that, after he saw the tape, he realized it was because of the speed. The judge did not believe that his apology was sincere.

{¶ 41} Nonetheless, Brownlee argues that "the trial court failed to articulate, during the sentencing hearing, any reason why [he] deserved the maximum sentence." A sentencing judge must consider the principles and purposes of sentencing when imposing a sentence, but is not required to make findings or give reasons before imposing a maximum sentence. *State v. Henderson*, 9th Dist. Summit No. 27078, 2014–Ohio–5782, ¶ 44. "Unless the record shows that the court failed to consider the factors, or that the sentence is 'strikingly inconsistent' with the factors, the court is presumed to have considered the statutory factors if the sentence is within the statutory range." *Id.*, quoting *State v. Fernandez*, 9th Dist. Medina No. 13CA0054–M, 2014–Ohio–3651, ¶ 8.

{¶ 42} Brownlee has not indicated which factors he alleges the court failed to consider, and he concedes that his sentence is within the statutory range. Our review of the record does not indicate that Brownlee's sentence is "strikingly inconsistent" with any sentencing factor. *See id*. At the sentencing hearing, the prosecutor noted that Brownlee had a lengthy criminal record including seventeen prior felonies, two of which were for failure to comply. *See* R.C. 2929.12(D)(2). In addition, the judge, who had the opportunity to observe Brownlee's demeanor, found that his apology was not sincere. *See* R.C. 2929.12(D)(5).

{¶ 43} The jury found Brownlee guilty of failure to comply with an order or signal of a police officer and that he did cause a substantial risk of serious physical harm to persons or property. Under those circumstances, R.C. 2929.331(C)(5)(b) sets forth additional factors for a court to consider in determining the seriousness of the offender's conduct for purposes of sentencing. Among those factors are the duration of the pursuit, the distance of the pursuit, the offender's speed during the pursuit, whether the offender committed any moving violations during the pursuit and the number of moving violations. R.C. 2929.331(C)(5)(b).

{¶ 44} Contrary to Brownlee's assertion, the trial judge referenced these factors during sentencing, particularly his speed and the duration of the pursuit. In addition, having presided over the jury trial, she was familiar with the evidence presented. Officer Plesz's testimony and his dashc[]am video showed that Brownlee committed multiple moving violations while covering 10.4 miles at speeds exceeding 100 m.p.h. *See* R.C. 2929.331(C)(5)(b). Although the trial judge did not specifically enumerate each factor during the sentencing hearing, such a recitation is not required and it is presumed that she considered them when imposing sentence. *See Henderson*, 2014–Ohio–5782, at ¶ 44.

{¶ 45} Brownlee's third assignment of error is overruled.

*Brownlee*, 2015 WL 4005964, at *7-8*.

Brownlee cannot show that the state Court of Appeals' determination was contrary to or an unreasonable application of clearly established federal law or resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings.  28 U.S.C. § 2254(d).  Accordingly, Ground Three also fails on the merits.

## V. Conclusion and Recommendation

For the reasons stated above, the undersigned recommends that Brownlee's habeas petition be **DENIED** because his grounds for relief are not cognizable and/or fail on the merits. His Motion for Immediate Release (Doc. 8) is **DENIED** as moot.

Dated: June 1, 2016

Kathleen B. Burke
United States Magistrate Judge

## OBJECTIONS

Any objections to this Report and Recommendation must be filed with the Clerk of Courts within fourteen (14) days after the party objecting has been served with a copy of this Report and Recommendation.  Failure to file objections within the specified time may waive the right to appeal the District Court's order.  *See United States v. Walters*, 638 F.2d 947 (6th Cir. 1981); s*ee also Thomas v. Arn*, 474 U.S. 140 (1985), *reh'g denied*, 474 U.S. 1111 (1986).